**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff/Respondent,** | § | |
| | § | **CR. No. C-11-266** |
| **v.** | § | **(C.A. No. C-12-203)** |
| | § | |
| **ELOGIO VALENTIN TORRES-** | § | |
| **ORELLANA,** | § | |
| | § | |
| **Defendant/Movant.** | § | |

**MEMORANDUM OPINION AND ORDER**

On June 22, 2012, the Clerk's office received a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 from Defendant Elogio Valentin Torres-Orellana (Torres-Orellana). D.E. 42. The government filed a combined response and motion to dismiss. D.E. 46.

**I.  JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**II.  BACKGROUND**

**A.     Criminal Offense**

Torres-Orellana was encountered walking across a ranch in Brooks County, Texas with four others in February 2011. After the investigating agent determined that he was an undocumented alien from Guatemala who was ordered removed from the United States in May 2010, Torres-Orellana was arrested. D.E. 1.

**B.     Criminal Proceedings**

Torres-Orellana was appointed counsel the day after his arrest. D.E. 3. He was indicted on March 9, 2011, and arraigned shortly thereafter on the charge of Illegal Reentry in violation of 8

1

U.S.C. §§ 1326(a) and 1326(b). D.E. 7, Minute Entry March 15, 2011. He pled guilty, without a plea agreement, to the charge of Illegal Reentry before a federal Magistrate Judge. Minute Entry April 14, 2011, D.E. 13, 15.

At rearraignment, Torres-Orellana was advised of the maximum punishment,

Now, the maximum possible punishment that you're facing will depend upon your criminal history. But the absolute maximum sentence that you could receive is up to 20 years in the federal penitentiary. In addition to going to prison for up to 20 years, you could be fined up to $250,000. And if you are sent to prison, upon your release from prison, you could be facing up to three years of supervised release. Supervised release is a period of supervision of your behavior after you are released from prison. . . . Also, if you are convicted, you will have to pay a $100 special assessment. And it's important that each of you understands that there is no parole in the federal system. Do you understand the maximum punishment you are facing if you are convicted?

D.E. 28 at 10-11. Torres-Orellana testified he understood. He also testified that by pleading guilty he was subject to deportation. Id. at 11. The Magistrate Judge advised Torres-Orellana of the method by which his sentence would be calculated under the sentencing guidelines. Torres-Orellana testified that he and counsel had discussed the sentencing guidelines and how they might apply in his case. Id. at 13. Torres-Orellana further testified that he had not been threatened or promised leniency for his guilty plea. Id. He testified he was pleading guilty voluntarily. Id. at 14. Torres-Orellana pled guilty and agreed with the facts recited by the government. Id. at 17. The Court adopted the Findings and Recommendation on Plea of Guilty by the Magistrate Judge. D.E. 16.

The Probation Department prepared a Presentence Investigation Report (PSR). D.E. 17. The base level offense for Illegal Reentry is 8. U.S.S.G. § 2L1.2(a). Torres-Orellana was previously convicted of an alien smuggling offense which increased his offense level by 16 points pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(vii).  Id. at ¶ 12. After credit for acceptance of responsibility, his total offense level was 21. Id. at ¶¶ 16-20. Torres-Orellana had a prior misdemeanor DUI offense and his

2

conviction for alien trafficking. His total criminal history points were 7, including two points because he was on supervised release at the time of his current offense. Id. at ¶¶ 22-26. His criminal history category is IV. Id. at ¶ 26. His guideline sentencing range was 57-71 months. Id. at ¶ 39. No objections were filed to the PSR. D.E. 19.

At sentencing, Torres-Orellana acknowledged that he reviewed the PSR with counsel and there were no objections. D.E. 34 at 3. The Court imposed a sentence below the advisory guideline range and sentenced him to 48 months imprisonment, 3 years supervised release, no fine, and a special assessment of $100. D.E. 22. The Court informed him of his right to appeal. D.E. 34 at 8.

After sentencing Torres-Orellana for Illegal Reentry, the Court held a hearing on a petition alleging he violated the conditions of his supervised release imposed following his California conviction (09-cr-243) for alien smuggling. Torres-Orellana pled true to the allegations. The Court sentenced him to 6 months imprisonment to run consecutively to the sentence for Illegal Reentry. Id. at 11. No further term of supervised release was imposed. Id. The Court advised Torres-Orellana of his right to appeal. Id.

Torres-Orellana timely appealed his sentence for Illegal Reentry. D.E. 21. The Fifth Circuit Court of Appeals dismissed his appeal as frivolous. D.E. 41. Torres-Orellana timely filed his motion pursuant to 28 U.S.C. § 2255. D.E. 42.

### III.  MOVANT'S ALLEGATIONS

Torres-Orellana raises two grounds of ineffective assistance of counsel based upon counsel's failure to, 1) obtain for him the two point reduction in his offense level from the fast track program and 2) notify him of the BOP classification scheme that applied to him as a deportable alien that prevented him from participating in programs that could lead to early release. D.E. 41 at 4, 5.

3

## IV.  ANALYSIS

### A.        28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

### B.        Standard for Claims of Ineffective Assistance of Counsel

Generally, an ineffective assistance of counsel claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States

4

v. Herrera, 412 F.3d 577, 581 (2005).[1]

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## C.   Claims of Ineffective Assistance of Counsel at Sentencing

### 1.   *Fast track program*

Torres-Orellana claims counsel was ineffective at sentencing because Torres-Orellana did not receive any benefit from the fast track program. As an initial matter, the Corpus Christi Division of the Southern District of Texas did not have a fast track program. Such programs are created by the United States Attorneys and approved by the Attorney General. See  United States v. Gomez-Herrera, 523 F.3d 554, 559-60 (5th Cir. 2008) (describing programs); U.S.S.G. 5K3.1 (2011 Edition).[2] Counsel was not ineffective for failing to advise Torres-Orellana of a program that did not exist in this division at the time of his guilty plea and sentencing, or for failing to argue for sentencing consideration on that basis. See Gomez-Herrera, 523 F.3d at 562-63 & n.4 (5th Cir. 2008); United States v. Uribe-Almaraz, No. 11-50491,464 Fed. App'x. 321-22 (5th Cir., Mar. 13,

---

[1]  The Fifth Circuit adopted the "any amount of jail time" test in United States v. Grammas, 376 F.3d 433, 439 (5th Cir. 2004). "This test originated from the Supreme Court's decision in Glover v. United States where the Court explained that any amount of additional jail time has significance under Strickland." Id. (internal citations omitted).

[2]  5K3.1. Early Disposition Programs (Policy Statement)
"Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."

2012) (per curiam) (designated unpublished).

2. *Status as deportable alien and effect on his sentence*

Claim two complains that counsel was ineffective for failing to advise Orellana-Torres that his status as a deportable alien would result in his ineligibility for lower security confinement by the Bureau of Prisons and ineligibility for early release. He claims this ineligibility is a violation of civil and constitutional rights. D.E. 42 at 5. This ground is also without merit.

Even if counsel had advised Torres-Orellana of these facts and requested the Court consider these factors, counsel would not have been successful. The sentencing guidelines provide that a downward departure on the basis that the defendant is a deportable alien, while permissible, is proper only in the extraordinary case, and such cases are considered "highly infrequent." See United States v. Garay, 235 F.3d 230, 232-33 & n.8 (5th Cir. 2000); see also United States v. Nnanna, 7 F.3d 420, 422 (5th Cir. 1993) (a bank robbery case in which the court held that "[c]ollateral consequences, such as the likelihood of deportation or ineligibility for more lenient conditions of imprisonment, that an alien may incur following a federal conviction are not a basis for downward departure.").

Moreover, in an immigration offense, a defendant's alienage has been adequately taken into consideration and thus is not a permissible basis for downward departure. Garay, 235 F.3d at 233-34 (defendant's "status as deportable alien, as an inherent element of his crime, has already been considered by the [Sentencing] Commission in formulating the applicable guidelines"); United States v. Foote, 2001 WL 671465, *3-*4 (N.D. Tex. 2001) (rejecting argument by § 2255 movant that his counsel should have moved for downward departure); cf. United States v. Maldonado, 242 F.3d 1, 4-5 (1st Cir. 2001) ("a deportable alien who commits a crime is still within the 'heartland'

of the guidelines;" "the common facts of a long sentence and likely deportation" do not by themselves make a case extraordinary such as to warrant a downward departure); <u>United States v. Jasso</u>, 460 Fed. App'x. 432, *2 (5th Cir., Feb. 15, 2012) (per curiam) (designated unpublished) ("A defendant's status as a deportable alien cannot serve as a ground for a downward departure if the defendant is sentenced for an immigration offense of which his alien status is an element, as is the case here.").

The Court was aware of Torres-Orellana's alien and deportation status, as well as  what that meant in terms of the BOP's policies and restrictions,. The Court was also aware that those factors were already taken into account by the advisory sentencing guidelines for his offense. Thus, the Court would not have further reduced his sentence had counsel raised an objection on this ground at sentencing.  Because Torres-Orellana cannot show that the advice counsel did not give him would have made any difference in his sentence, he was not prejudiced by counsel's alleged failure. Accordingly,  his second ineffective assistance of counsel claim also fails.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Torres-Orellana has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 RULES.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El

v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Torres-Orellana is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Torres-Orellana's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 42) is **DENIED**. He is also **DENIED** a Certificate of Appealability.

So **ORDERED** on this 13th day of February, 2013.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

8